71429. LORD v. K-MART CORPORATION et al.
(340 SE2d 225)

BIRDSONG, Presiding Judge.

Summary Judgment — False Imprisonment and Slander. The facts giving rise to this appeal reflect the following. On Friday, August 17, 1984, Mrs. Sharon Lord was shopping in the K-Mart discount store in Dublin. She was observed by several different store employees who characterized her behavior as "suspicious." She was observed repeatedly looking over her shoulder as if to see if anyone was watching her. She was aimlessly wandering about the store but making no purchases. She was observed at one point with her hand in her large shoulder supported purse and one employee concluded that when Mrs. Lord realized that she was being watched, she "snatched" her hand from the purse. At another point she was observed in the toy department kneeling with her legs bent and her opened purse between her knees. Whenever a store employee came close, Mrs. Lord appeared to move quickly away. Because of her "suspicious" activities in the store, her presence was reported to the assistant store manager as well as to other store employees to aid in keeping her under surveillance. These employees also observed Mrs. Lord and saw much the same actions.

The assistant store manager, Helman, was informed by one employee that the employee believed Mrs. Lord had shoplifted some unknown item because of the way she (Mrs. Lord) acted. Mrs. Lord eventually exited the store and was followed by Helman. When Mrs. Lord arrived at her car in the parking lot, Helman approached her, and in a conversational tone of voice, asked Mrs. Lord if she had any-

thing belonging to K-Mart. When Mrs. Lord acted surprised (by asking "What"), Helman repeated the question, "Do you have anything in your pocketbook belonging to K-Mart?" At no time did Helman restrain her, tell Mrs. Lord to stop, that she was under arrest, or that she should accompany him back into the store. Mrs. Lord voluntarily offered her open pocketbook for him to examine. Helman, without saying another word, left Mrs. Lord at her car and returned to the store, she being free to leave. Mrs. Lord pursued Helman loudly expressing her indignation. She contacted her husband and their lawyer who came to the store and confronted the store manager. The store manager denied that Mrs. Lord had been accused of shoplifting and apologized for any embarrassment or inconvenience caused Mrs. Lord. Three days later, this suit was filed asserting false imprisonment, defamation and negligent false imprisonment. The trial court granted K-Mart and its employee Helman summary judgment. It is this grant of summary judgment that forms the basis of this appeal. *Held*:

1. While enumerations of error 1 and 3 ostensibly deal with separate facets of false imprisonment, enumeration 1 concerned with a standard unlawful detention and enumeration 3 with a negligent choice of action resulting in that detention, the two enumerations are both controlled by the determination of whether there was any detention at all, unlawful, negligent or otherwise. Thus, we have consolidated enumerations 1 and 3 for discussion in this one division.

The evidence illuminating the issue of detention, in our opinion fully supports the conclusion of the trial court, that there was no detention.

Unrebutted testimony offered by K-Mart's employees indicated that the store's policies required them to watch for persons who were wearing unseasonable clothing, carried large purses, constantly looked around to see if they were being observed, acted in a nervous manner or became upset if approached. Although Mrs. Lord offered an explanation for her admitted conduct (she was looking for her five-year-old son who had become separated from her), she conceded the store employees were never made aware that she was looking for her child. The facts clearly established that Mrs. Lord fit at least four of the five criteria for a typical shoplifter. Additionally, the employees had observed Mrs. Lord moving about the store in a random manner indicating no apparent intention to purchase any items. She was observed crouched down with her open purse between her knees. At least one employee was of the opinion that Mrs. Lord had already surreptitiously taken something and placed it into her purse and that suspicion had been communicated to the assistant store manager.

Mrs. Lord's assertions of opinion or conjecture that the assistant manager "ran" out of the store after Mrs. Lord find little support in

the evidence of record. She opined he must have run after her because he was not present when she turned to see if her child was following her and yet was near her a moment later. The only direct evidence on this point was that of the assistant store manager and an employee who witnessed the confrontation between Mrs. Lord and the assistant store manager. Each of these witnesses deposed that Helman had waited until Mrs. Lord walked out of the store and then followed her at a walk where he caught up to her as she reached her car. There is no evidence that Helman forced Mrs. Lord to stop, or even used that word, nor did he suggest that she was not to leave the area. He did not ask to search her or her belongings. He did not ask her to return to the store, the usual procedure when a shoplifter was apprehended. Store policy was that shoplifters were prosecuted and when caught the shoplifter was informed he was under arrest and required to return to the privacy of a store office. In this case the only evidence of contact between Mrs. Lord and Helman was the asking of what obviously was an embarrassing question to Mrs. Lord, i.e., did she have anything in her purse belonging to K-Mart? Indeed Mrs. Lord herself admitted she thought she was free to leave at any time. The asking of the question was not inappropriate in view of the unrebutted evidence that Mrs. Lord had been acting in an apparently suspicious manner. OCGA § 51-7-60 implicitly recognizes the right of a shop owner to protect himself from shoplifting by detaining a customer who has acted in a suspicious manner. Certainly a question is appropriate to protect property yet falls far short of what the statute authorizes a temporary detention to determine the existence or nonexistence of shoplifting. It is clear that where a detention occurs the reasonableness of the detention is a jury question (*United States Shoe Corp. v. Jones*, 149 Ga. App. 595 (255 SE2d 73)), but there is no issue for the jury where there is no detention.

OCGA § 51-7-20 defines false imprisonment as the unlawful detention of another for any length of time, whereby such person is deprived of his personal liberty. Our primary inquiry and concern is whether under the facts which in general are undisputed Mrs. Lord was "detained." In a case of almost remarkable similarity, the simple asking of a question (in that case preceded by a touching to gain attention) was held not to be a detention. *Abner v. W. T. Grant Co.*, 110 Ga. App. 592, 595 (139 SE2d 408). That case concluded the simple asking of the questions, "Did you buy anything in this store?" and "What about that bag in your hand?" did not amount to a detention of the person nor were the words of the questions of a nature to raise in the mind of a reasonable person an apprehension that force would be used to effect a confinement upon the customer. While it may be conceded that Mrs. Lord undoubtedly was caused embarrassment, that is not the same as unlawful imprisonment. See *Burrow v. K-Mart*

*Corp.*, 166 Ga. App. 284, 286 (304 SE2d 460) where it was not considered unlawful to insist upon searching the packages of a customer upon leaving the store; and *F. W. Woolworth Co. v. Loggins*, 115 Ga. App. 557, 558 (155 SE2d 462) where it was held not to be unlawful to "snatch" two lamps from a customer's hands after the customer left the store (which lamps had been purchased in another store) and carrying the lamps back into the store pending a determination of from whence came the lamps.

We conclude in this case the same as did this court in the *Abner* case, supra, Mrs. Lord's own testimony by deposition eliminated from this case every genuine issue as to any material question pertaining to a detention, an essential element of unlawful imprisonment. Thus as to this facet of Mrs. Lord's arguments, we find no error in the grant of summary judgment to K-Mart.

2. We reach the same conclusion concerning the allegation of slander. Mrs. Lord could only opine that someone may have seen the confrontation between Helman and herself. She admitted she was not certain the incident had been seen by anyone. The store was involved in a special sale and therefore Mrs. Lord concluded someone "must" have seen the incident. Once again, the only direct evidence as to this issue was the testimony of the employee who was outside the store and did observe the confrontation as well as the testimony of Helman. Each of these employees stated by deposition that the parking lot was empty at the time and there were no customers outside the front of the store. Each stated that no one could have seen or overheard anything spoken by either Helman or Mrs. Lord. It also is uncontradicted that after Helman turned and walked away from Mrs. Lord, she followed Helman to the store and later entered the store loudly protesting the so-called accusation. Accordingly, we find support for the conclusion of the trial court that if there was any publication of the alleged slander, it would have been by Mrs. Lord and not K-Mart. Even assuming arguendo there had been publication by K-Mart by the public accusation, as was stated in *Burrow v. K-Mart Corp.*, supra, p. 286, the action taken by Helman to deter a putative shoplifter was neither unreasonable nor could the asking of the question be judicially invested with criminality. There being no unresolved issues of material fact, we find no error in the grant of summary judgment to K-Mart and Helman upon the second leg of her argument. *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442).

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs in the judgment only.*

Decided January 22, 1986 —
Rehearing denied February 4, 1986 — 

*Johnny W. Warren, J. Stanley Smith, Jr.*, for appellant.
*David B. Higdon*, for appellees.