A02A0621. LITTLE et al. v. CHESSER et al.
(568 SE2d 54)

POPE, Presiding Judge.

Marni Owens sued Louise Little and Maxine Bullock for interference with easement. Owens' husband, C. J. Chesser, made a claim against Little for malicious prosecution and arrest. The jury awarded $3,000 to Owens on her claim of interference with easement and $5,000 to Chesser on his claim against Little for malicious arrest. The jury also awarded Owens $12,500 as punitive damages against Little and $12,500 as punitive damages against Bullock. Little and Bullock appeal, claiming that the trial court erred in denying their motions for a directed verdict, judgment notwithstanding the verdict (j.n.o.v.), and a new trial because (1) the jury's award to Owens for actual damages on her claim for interference with easement was excessive and unsupported by the evidence, (2) the jury's award to Chesser on his claim for malicious arrest was excessive and unsupported by the evidence, and (3) the issue of punitive damages was improperly submitted to the jury. For reasons set forth below, we disagree and affirm.

Viewed in a light most favorable to the verdict, the record shows that Chesser and Owens accessed their farm through an unpaved road which ran through property owned jointly by Little and Bullock. The right to use and maintain the road was established by a reciprocal easement contained in a court order. Chesser and Owens were married, but the rights established by the easement belonged to Owens as owner of the farm.

In 1998, a tornado came through the area and blocked the road

with fallen trees and other debris. The road was partially cleared with the help of volunteers. A few days later two tires on Chesser's horse trailer were flattened when the trailer hit a log lying in the curve of the roadway. Logs continued to reappear in the roadway after Chesser moved them. Owens went to investigate and saw Bullock put logs on the road and turn the stobs up. Owens took photographs, and Chesser later made a videotape of Bullock moving logs onto the road, and Bullock admitted to placing the logs when Chesser and Owens asked her about it.

The reciprocal easement gave Owens the right to maintain the road. Shortly after the tornado, Chesser and Owens decided to repair the road. Before beginning the physical work, Chesser hired a surveyor to mark the easement. The surveyor marked the boundaries of the roadway using three-foot-long sticks painted fluorescent orange. Chesser then hired Donald and Darren Alexander to clear and flatten the road within the surveyed area.

Shortly after the Alexanders began work, Bullock stopped them by standing in the middle of the road. For over an hour, Chesser read and reread to Bullock the court order that defined the reciprocal easement; she then walked back to her house and work resumed. Little, who was in town at work, learned about the roadwork through a telephone call from Bullock, who told her that "the dozers were tearing up everything" on their property. Little became very upset and left her job to go to the courthouse, where she swore out a warrant for Chesser's arrest based on a violation of the court order establishing the easement. Little had no personal knowledge of Chesser's activities, but she falsely swore to the magistrate who issued the warrant that she did have personal knowledge. That afternoon, a sheriff's deputy drove out to the road to execute the arrest warrant for Chesser. The deputy told Chesser that he had come to arrest him, but allowed Chesser's employee to drive him to the White County Detention Center, where Chesser waited in the detention area for five hours before being allowed to go home.

When the Alexanders came back to work on the road two or three weeks later, Little and Bullock both interfered with the work; Chesser testified that approximately twelve hours of work were lost through interference by Little and Bullock, and that the Alexanders charged $100 an hour. Evidence also showed that Little and Bullock would slow traffic on the road by walking on it in front of a vehicle for an extended period of time, which would force the vehicle to travel at walking speed, and that on occasion Bullock would just stand in the middle of the road and stare at Chesser.

1. Little and Bullock claim that the trial court erred in denying their motions for a directed verdict, for j.n.o.v., and for a new trial because the jury's damage award for interference with easement was

excessive and not authorized by the evidence. We disagree. "The standards for granting a directed verdict or a judgment notwithstanding the verdict are the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." *Wesleyan College v. Weber*, 238 Ga. App. 90, 92 (517 SE2d 813) (1999). The trial court did not err in denying Little's and Bullock's motions for a directed verdict or j.n.o.v. because the evidence authorized the jury to find for Owens on her claim for interference with easement.

Absent compelling evidence, we will defer to the ruling of the trial court on a motion for new trial based on inadequate or excessive damages. *Moody v. Dykes*, 269 Ga. 217, 222 (6) (496 SE2d 907) (1998). "The trial court's decision on a motion for a new trial will be upheld on appeal unless it was an abuse of discretion." *Lisle v. Willis*, 265 Ga. 861, 864 (3) (463 SE2d 108) (1995). "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a). The jury was charged as follows: "the measure of damages . . . is the additional costs of repair to the easement, if you find any, which were necessitated by any improper interference with her road right-of-way, as well as any nominal damage which you . . . find would accrue as a result of any loss of use of such easement. . . ." Out-of-pocket costs authorized by the evidence that could be traced to acts of interference include twelve hours of time by the Alexanders and the cost of replacing two tires on the horse trailer, which could account for about half of the $3,000 award. The jury was also instructed that they could award nominal damages. It is unclear from the verdict how and on what basis the jury determined damages, but even if a substantial portion of the verdict was for nominal damages, we cannot say that the award was excessive. See *Ponce de Leon Condos. v. Di Girolamo*, 238 Ga. 188, 190 (3) (232 SE2d 62) (1977); *Baker v. Wilson*, 143 Ga. App. 488, 489 (1) (238 SE2d 587) (1977).

2. Little also claims that the jury's award to Chesser for malicious arrest was improper, and that the trial court erred in denying her motion for a new trial on this ground. We again disagree. The trial court charged the jury: "Now, as to the claim of C. J. Chesser, I charge you that in an action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except in the enlightened conscience of impartial jurors."

Little argues that the trial court determined that the proper measure of damages for the malicious arrest would be "vindictive damages" equal to double the actual damages — which she further

argues would amount to nothing inasmuch as there were no actual damages. The trial court used the term "vindictive damages" in his discussions with counsel, but "Ga. L. 1987, p. 915, § 6[,] codified as OCGA § 51-12-6, repealed vindictive damages as a punitive damage and recreated such damages to the peace and happiness as a general damage, measured in the enlightened consciences of impartial jurors." *Sletto v. Hosp. Auth. of Houston County*, 239 Ga. App. 203, 210, n. 2 (521 SE2d 199) (1999) (Eldridge, J., concurring specially). The trial court used outdated terminology in discussions with the lawyers, but charged the jury consistent with a claim for damages under OCGA § 51-12-6, authorizing assessment of damages in tort cases in which the entire injury is to the peace, happiness, or feelings of the plaintiff, and this measure of damages is appropriate for a claim for malicious arrest. See, e.g., *Atlantic Zayre v. Williams*, 172 Ga. App. 43, 47 (5) (322 SE2d 83) (1984). Given the measure of damages lay within the enlightened conscience of the jurors, the $5,000 award to Chesser for his malicious arrest was not excessive or unauthorized by the evidence.

Little further argues that, because of the order in which the jury received the charges on damages, the jury was under the impression that its damage award to Chesser on his claim of malicious arrest was an award for punitive damages. The jury was charged on punitive damages with regard to the interference with easement claim asserted by Owens, and the trial court then shifted to the charge on the malicious arrest claim, stating, "Now, as to the claim of Plaintiff C. J. Chesser. . . ." We find no error in the order in which the trial court presented the jury charge.

3. Little and Bullock further argue that the trial court erred in denying their motions for a directed verdict, j.n.o.v., and new trial because the issue of punitive damages for Owens' claim for interference with easement was improperly submitted to the jury. The evidence shows a wilful and repetitive violation of Owens' property rights. "If a person commits a trespass with knowledge that he is acting without right, exemplary or punitive damages may be awarded." (Punctuation omitted.) *Dalon Contracting Co. v. Artman*, 101 Ga. App. 828, 836 (4) (115 SE2d 377) (1960). See also *Tomberlin Assoc. &c. v. Free*, 174 Ga. App. 167, 168-169 (3) (329 SE2d 296) (1985). The evidence authorized an award of punitive damages. Little and Bullock argue that the trial court nevertheless erred in presenting the issue of punitive damages to the jury because (1) the parties stipulated that punitive damages would not be available for Owens' claim for interference with easement, and (2) the verdict form submitted to the jury was different from the verdict form which was read aloud and explained to the jury. They further claim that the proceedings violated their right to due process because they were denied an

opportunity to defend against a claim for punitive damages. See *Church v. Darch*, 268 Ga. 237 (486 SE2d 344) (1997). We find that although the trial court may have erred, Little and Bullock acquiesced to the errors which they now assert in connection with the submission of punitive damages to the jury.

The amended complaint included a claim for punitive damages for obstruction of the driveway easement. Nevertheless, the parties stipulated during trial that punitive damages would not be available for Owens' claim for interference with easement:

> The Court: Unlawful interference with easement. You agree there's no way [Owens] can get punitive damages on unlawful interference of easement.
> Plaintiff's counsel: That's my position today. . . .
> The Court: Then I will take that as a stipulation of the parties.

Despite the stipulation, and without indication on the record that the stipulation was withdrawn, the trial court charged the jury that Owens had made a claim for punitive damages and instructed the jury on the definition of punitive damages and the burden of proof.

The form of the verdict submitted to the jury allowed the jury to award punitive damages on Owens' claim for punitive damages; defense counsel reviewed the written verdict form before it was given to the jury; a judgment for punitive damages on Owens' claim was returned by the jury; and the trial was bifurcated and a separate proceeding was held to determine the amount of punitive damages. All this occurred without objection from Little or Bullock that punitive damages were unavailable because of the previous stipulation or that they were unfairly surprised by the form of the verdict submitted to the jury.

It is not clear from the trial record why the claim for punitive damages was presented to the jury after a stipulation was made that such damages would not be available, but the post-trial hearings indicate that the claim was not presented to the jury by the trial court sua sponte and without warning. Counsel for the plaintiffs testified that the decision by the trial court to submit punitive damages to the jury was made in an unrecorded discussion among counsel and the trial court. Defense counsel testified that he recalled the trial court commenting in an unrecorded charge conference, "Hey, why can't Marni Owens get punitive damages?" The trial court also indicated at the post-trial hearing that he did not simply introduce the punitive damages claim without telling anyone. But for whatever reason that the charge and verdict form actually given to the jury were inconsistent with the stipulation against punitive damages, if

defendants thought they need not or had not defended against punitive damages by reason of the stipulation, they had the opportunity and the duty to object once they knew that a punitive damages claim would be submitted to the jury. A litigant cannot acquiesce to a trial court's ruling and then assign error to it later. See *Plaza Properties v. Prime Business Investments*, 273 Ga. 97 (538 SE2d 51) (2000); *Upshaw v. Cooper*, 127 Ga. App. 690, 692 (194 SE2d 618) (1972). When hearing an improper verdict, a litigant cannot sit by silently and hope to gain a mistrial by failing to object. See *Witty v. McNeal Agency*, 239 Ga. App. 554, 560 (3) (a) (521 SE2d 619) (1999). And not only did Little and Bullock have an opportunity to object through the end of the bifurcated proceedings, they could have indicated their disagreement before the issue of punitive damages even reached the jury. The discrepancy between the form of the written verdict and the verdict form read orally to the jury did not amount to reversible error. Although the judge did not read the line which authorized the award of punitive damages, the jury was properly charged on punitive damages and defense counsel reviewed the written form submitted to the jury.

*Judgment affirmed. Ruffin and Barnes, JJ., concur.*

DECIDED MAY 10, 2002 —
RECONSIDERATION DENIED JULY 1, 2002 — ▮▮▮▮▮▮▮

*Tina M. Richards*, for appellants.
*Carey, Jarrard & Walker, Jack M. Carey, Jerry C. Carter, Jr., Don H. Ferguson*, for appellees.