**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1373. SMITH v. WAL-MART STORES EAST, LP.

BRANCH, Judge.

In November 2010, plaintiff Felicia Smith was showing a male customer some iPods in the Macon Wal-Mart where she was working when another man stole a number of the devices from the case Smith had left open. A few weeks later, Smith's supervisors ushered her into a back office at the store, showed her a videotape of the incident, and accused her of acting in concert with the thieves. Smith denied these accusations. After Wal-Mart referred the matter to the Macon police, Smith voluntarily went to a precinct, where she was arrested on 14 counts of fiduciary theft and one count of making a false statement. After the charges were dropped, Smith brought the instant action for false arrest and false imprisonment against Wal-Mart. On appeal from the trial court's grant of summary judgment to Wal-Mart, Smith

argues that genuine issues of material fact remain as to her claims. We agree as to her claim for false imprisonment arising from her arrest and therefore reverse in part.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . [T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (citation omitted).

Viewed in Smith's favor, the record shows that Smith was working on the early morning of November 19, 2010, when she unlocked an electronics case in order to show a man some of the iPods inside. During Smith's conversation with him, the man moved back and forth in front of Smith, thereby blocking her view of a second man, who also moved toward and away from the case as well as from side to side so as to avoid being seen by Smith. While Smith was distracted by the first man, the second man removed a number of iPods from the case and walked away in the opposite direction from Smith. After the second man turned the corner at the end of the aisle,

2

the first man told Smith that he needed to check his bank balance on an ATM, walked toward the front of the store, and left without further contact with Smith. Smith never realized that any iPods were missing. Both men were later apprehended and charged with the theft of the iPods.

A few weeks later, on the night of December 7, 2010, Smith was working when the manager asked her to come to a back office. Although Smith thought that she might be interviewed for a promotion she had applied for, the manager left her in the office with loss prevention officers Richard Vining and Vashali Patel. Smith later averred that Vining and Patel blocked the door of the office so that she could not leave. Smith testified at deposition, however, that Vining and Patel told Smith at or before the conclusion of the meeting that she was free to leave, never touched her, and never suggested that they were going to arrest her or have her arrested. When Vining asked Smith if she knew why she had been called in, Smith replied that she did not. Vining then told Smith that they had her "on camera letting some guys get some iPods" and showed her the videotape of the incident on the early morning of November 19. When Smith began to cry, Vining told her that she was "putting on an act" and that although he had believed her at first, he was now going to suspend her. Smith gave a statement denying any involvement in the theft and later testified that

she did so in order to disprove the accusations against her. Vining then recalled the manager, who escorted Smith out of the store.

On December 15, 2010, Officer Spikes with the Macon Police Department called Smith and asked her to come to the precinct to give a statement on the iPod incident. Although Smith's infant daughter had just been released from the hospital, Smith went to the precinct with the infant the same day. When Smith arrived, police offered to assist her in making "arrangements for somebody to come and get [her] daughter." According to both Smith and Spikes, Spikes then called Patel. According to Smith, Spikes told Patel that Smith and her daughter were at the precinct, and asked, "What do you want us to do with her?" Spikes also asked Patel to allow Smith's sister, who worked at the same Wal-Mart, to come to the precinct to pick up Smith's daughter.

After Smith's sister picked up Smith's daughter, Spikes, Johnson, and another police officer questioned Smith about the iPod incident and viewed the videotape with her. When Smith said that she had not seen the second man pictured in the videotape and denied any involvement in the thefts, Detective Johnson told her that she was "fixing to go to jail, trying to protect somebody else." When Smith continued to protest that she was innocent, she was handcuffed and charged with 14 counts of

fiduciary theft and one count of making a false statement. Johnson testified that he arrested Smith after conducting an "independent" investigation on the basis of evidence, including the videotape and Smith's denials, that gave him probable cause to arrest her for both theft and making a false statement. Johnson also averred that no Wal-Mart employee had influenced his decision to arrest Smith.

Smith was then taken to Macon City Hall, where she signed a transcript of her statement to police. Smith was held in the city jail until later that evening, when her sister posted bond for her. After Smith retained counsel, she learned that the charges against her had been nolle prossed and that a third Wal-Mart loss prevention officer's identification of a license plate had led to the arrest of two suspects in the case. Smith then brought this action against Wal-Mart for false arrest and false imprisonment.

In the course of discovery, the third Wal-Mart loss prevention officer, Jamarcus Williams, testified that although Vining and Patel had shown him the videotape and insisted that he must have seen that Smith was involved in the theft, Williams had replied that he "did not see anything on the video to make [him] think she was involved." Vining and Patel then told Williams that notwithstanding Williams's opinion, they "were going to call the police and have [Smith] arrested for theft

5

because of what they saw on the video."[1] After police arrested the first man, Johnson told Williams that the man had admitted that he had not acted with help from anyone from Wal-Mart at the time of the theft.

After both parties moved for summary judgment, the trial court granted summary judgment to Wal-Mart on grounds including that (1) Smith was never arrested pursuant to a warrant, which defeated her false arrest claim; (2) Smith was never detained or imprisoned in the Wal-Mart office, which defeated her false imprisonment claim arising from that encounter; and (3) police were justified in arresting Smith at the Macon police department for theft and making a false statement. This appeal followed.

1. Smith first contends that her false arrest claim remains viable. We disagree.

OCGA § 51-7-1 provides that "[a]n arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." As this Court has noted, an arrest "under process of law" is "an arrest made pursuant to a warrant," whereas "[f]alse imprisonment is the unlawful detention of the

---

[1] These statements by Vining and Patel are admissible as admissions made "concerning a matter within the scope of [their] agency or employment" with Wal-Mart, made "during the existence of [that] relationship." OCGA § 24-8-801 (d) (2) (D) (these and other admissions "shall not be excluded by the hearsay rule").

6

person of another, for any length of time, whereby such person is deprived of his personal liberty." *Ferrell v. Mikula*, 295 Ga. App. 326, 329 (2) (672 SE2d 7) (2008), citing OCGA §§ 51-7-1 and 51-7-20. The "key distinction" between false arrest and false imprisonment "is whether the person was detained using a warrant or not." Id. Because it is undisputed that Smith was never arrested pursuant to a warrant, her false arrest claim lacks merit, and the trial court did not err when it granted summary judgment to Wal-Mart on that claim. *Ferrell*, 295 Ga. App. at 330 (2).

2. Smith contends that genuine questions of material fact remain concerning her false imprisonment claims arising from (a) her encounter with Vining and Patel in the Wal-Mart back office and (b) her warrantless arrest by Macon police. We agree with the second of these contentions.

(a) OCGA § 51-7-20 defines the intentional tort of false imprisonment as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." "The essential elements of the cause of action for false imprisonment are a detention of the person of another for any length of time, and the unlawfulness of that detention." *Fields v. Kroger Co.*, 202 Ga. App. 475 (414 SE2d 703) (1992) (citation omitted).

A detention need not consist of physical restraint, but may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries.

*Fields*, 202 Ga. App. at 475 (citations and punctuation omitted). "However, 'there is no issue for the jury where there is no detention.'" Id., quoting *Lord v. K-Mart Corp.*, 177 Ga. App. 651, 653 (1) (340 SE2d 225) (1986).

Even construed in favor of Smith, the evidence before us does not authorize a conclusion that she was "detained" in the Wal-Mart office on the night of December 7, 2010. Although Smith averred in an affidavit that she felt that she was not free to leave because her "path out of the office was blocked" by Vinings and Patel, her own signed statement executed at Wal-Mart just after midnight stated that "[n]o threats and promises were made by anyone to get [her] to make [the] statement" and that she "ha[d] had complete freedom to leave the premises" throughout. Smith also testified at deposition that Vinings and Patel told Smith at or before its conclusion that she was free to leave, never touched her, and never suggested that they were going to arrest her or have her arrested.

8

In considering a motion for summary judgment, all the evidence is normally construed in favor of the nonmoving party, but testimony by the nonmoving party which contradicts other testimony given by the nonmoving party will be construed against that party, unless a reasonable explanation for the contradiction is offered.

*Hall v. Norfolk Southern Ry. Co.*, 258 Ga. App. 712, 715 (574 SE2d 902) (2002), citing *Prophecy Corp. v. Charles Rossignol*, 256 Ga. 27, 30 (1) (343 SE2d 680) (1986).

Smith has offered no explanation for the contradiction between her affidavit testimony that her path was blocked by Vining and Patel and her own signed statement and deposition testimony that she was free to leave throughout. See *Hall*, 258 Ga. App. at 715-716 (affirming grant of summary judgment when plaintiff failed to provide an explanation for the contradiction between his deposition and his affidavit testimony). Because we are thus obliged to ignore Smith's affidavit testimony that Vining and Patel blocked her way out of the Wal-Mart office, we conclude as a matter of law that Smith was never "detained" at Wal-Mart for purposes of false imprisonment law. *Crowe v. J. C. Penney*, 177 Ga. App. 586, 588 (2) (340 SE2d 192) (1986) (where employee never requested that employer's interview of her as to a theft be discontinued, and where she indicated that "she had not wanted to

9

terminate the interview until the matter was cleared up," summary judgment was properly granted to the employer on employee's false imprisonment claim); *Fields*, 202 Ga. App. at 476 (customer failed to show that she was detained when employee asked her a question and "her response to that question," including dumping the contents of her shopping bag, "provoked no further action" by employee). Compare *Hampton v. Norred & Assoc.*, 216 Ga. App. 367, 368-369 (1) (454 SE2d 222) (1995) (plaintiff raised a question of fact as to whether he was falsely imprisoned when evidence showed that an investigator "had handcuffs lying on a table, had a gun and microphone strapped to his leg, cursed at [plaintiff] and called him names, stomped on the floor, and kicked and beat the table," and when two other agents prevented him from exiting by blocking his way and telling him that he "could not leave until he admitted how much money he had stolen").

(b) We agree with Smith, however, that questions of fact remain as to whether Wal-Mart procured her false imprisonment when she was arrested by Detective Johnson.

"[O]ne who causes or directs the arrest of another by an officer without a warrant may be held liable for false imprisonment, in the absence of justification, and the burden of proving that such imprisonment lies within an exception rests upon the

10

person making the arrest or causing the imprisonment." *Scott Housing Systems v. Hickox*, 174 Ga. App. 23, 24-25 (1) (329 SE2d 154) (1985) (citations and punctuation omitted). As we explained in *Scott*,

> one who actively instigates or procures an arrest, *without lawful process*, is generally regarded as the principal for whom the officer acts, and he may be liable to respond in damages. But one who merely states to an officer what he knows of a supposed offense, even though he expresses the opinion that there is ground for the arrest, but without making a charge or requesting an arrest does not thereby make himself liable for false imprisonment. [I]t is not necessary that he direct the arrest in express terms. [Rather,] *[i]t is sufficient that the person alleged to have caused the plaintiff's arrest should by his conduct and acts have procured and directed the arrest*.

Id. at 25 (1) (citations and punctuation omitted; emphasis supplied).

On the question whether an arrest thus procured is legally justified, OCGA § 17-4-20 (a) provides in relevant part:

> An arrest for a crime may be made by a law enforcement officer . . . (2) [w]ithout a warrant if (A) [t]he offense is committed in such officer's presence or within such officer's immediate knowledge; (B) [t]he offender is endeavoring to escape; . . . or (F) [f]or other cause there is likely to be failure of justice for want of a judicial officer to issue a warrant.

11

Each of the exceptions to the warrant requirement set out in OCGA § 17-4-20 (a) "presuppose the existence of sufficient probable cause to believe that a crime has been committed," such that the statute "merely enumerates those . . . situations, in the nature of 'exigent circumstances,' in which a warrantless arrest may legally be made." *Collins v. Sadlo*, 167 Ga. App. 317, 319 (306 SE2d 390) (1983) (citations, punctuation and emphasis omitted). As the Supreme Court of Georgia has noted, moreover, a warrantless arrest is made with probable cause and is therefore legal "if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense." *Durden v. State*, 250 Ga. 325, 326 (1) (297 SE2d 237) (1982) (citation omitted).

Under the foregoing authorities, and given the undisputed facts that Smith was arrested without a warrant for theft and making a false statement, Smith may avoid summary judgment only if she shows on this appeal that issues of material fact remain as to (i) whether Wal-Mart procured her warrantless arrest; and (ii) whether that arrest was unlawful as not supported by exigent circumstances.

(i) On the question of whether Wal-Mart procured Smith's arrest,

12

[t]he law draws a fine line of demarcation between cases where a party *directly or indirectly* urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability . . . ; in the latter case there is not. It is clear, though, that *initiation of the criminal action need not be expressly directed by the party to be held liable*. A distinction must be taken between actually instigating or procuring the institution of criminal proceedings and merely laying information before a law enforcement official without in any way attempting to influence his judgment.

*Wolf Camera, Inc. v. Royter*, 253 Ga. App. 254, 257-258 (1) (a) (558 SE2d 797) (2002) (citation and footnote omitted; emphasis supplied).

Here, Smith's evidence showed that at or near the outset of Spikes' interview of Smith, Spikes called Patel, one of the two loss prevention officers who had referred the matter to police, and asked her, "What do you want us to do with her?" Smith did not overhear Patel's response to this question, and Patel also denied that the question had been asked. The evidence also showed that although Vining and Patel both averred that neither of them encouraged or directed Macon police to arrest Smith, they told Williams that they were going to obtain Smith's arrest on the basis of the videotape. As the trial court properly acknowledged, there was thus a conflict in the

13

evidence as to whether Wal-Mart directly or indirectly caused police to arrest Smith. In light of this conflict, we cannot say that the evidence showed as a matter of law that Wal-Mart did not procure Smith's warrantless arrest or that police made a sufficiently independent investigation of the incident. See *Scott*, 174 Ga. App. at 25 (1) (evidence including that an employer told a teminated employee that the employer would "secure an arrest warrant" left a jury question as to whether the employer was "the cause of plaintiff's arrest without a warrant and his subsequent unlawful detention"); *Adams v. Carlisle*, 278 Ga. App. 777, 787 (3) (a) (630 SE2d 529) (2006) (reversing grant of summary judgment to company on plaintiff's false imprisonment and other claims when a question of fact remained as to its employees' involvement in plaintiff's arrest); *Kroger Co. v. Briggs*, 323 Ga. App. 256, 265-266 (746 SE2d 879) (2013) (Boggs, J., concurring specially) (question of fact was raised as to whether a police officer had conducted a sufficiently independent investigation when some evidence showed that plaintiff was arrested immediately after grocery store employees notified police of their suspicions that plaintiff had passed a counterfeit bill at the store).

(ii) In order for Smith to survive Wal-Mart's motion for summary judgment on her false imprisonment claim, she must show not only that Wal-Mart procured her

warrantless arrest, but also that the same arrest was unlawful in that it did not occur under one or more of the "exigent circumstances" outlined in OCGA § 17-4-20 (a) (2). *Collins*, 167 Ga. App. at 319.

The only exigent circumstance claimed to exist in this case is that specified in OCGA § 17-4-20 (a) (2) (A), which provides that a police officer may make a warrantless arrest if an offense "is committed such officer's presence or within such officer's immediate knowledge." Wal-Mart has consistently maintained that Johnson's arrest of Smith without a warrant was lawful because Smith committed the crime of making a false statement in his presence. The trial court agreed with Wal-Mart. But Johnson would have been justified in arresting Smith without a warrant for either theft or making a false statement only if, in the course of reviewing the videotape and interviewing Smith, he obtained probable cause to believe that Smith was involved in the theft or that she was lying when she denied being so involved.

We review a trial court's finding that probable cause existed for an arrest later alleged to have caused a tort under the following standard:

> "[W]ant of probable cause is a question for the jury, under the direction of the court. The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show probable cause

15

existed is a matter of fact, to be determined by the jury, but whether they amount to probable cause is a question of law for the court."

*Melton v. LaCalamito*, 158 Ga. App. 820, 823 (2) (b) (282 SE2d 393) (1981) (citation and punctuation omitted), quoting *Hearn v. Batchelor*, 47 Ga. App. 213, 214 (170 SE 203) (1933). "[U]nless the facts regarding probable cause are undisputed, it is a question for the jury." *Wolf Camera*, 253 Ga. App. at 259 (1) (b).

Here, the facts known to Johnson consisted of Smith's, Vining's, and Patel's statements, all of which were based on their review of the videotape of the theft, and Johnson's affidavit fails to specify any evidence other than the videotape as the basis for his decision to arrest Smith. We have reviewed the videotape, and it substantially supports Smith's account that one man, significantly taller than she, engaged her for more than two minutes, blocking her view, while the second man made a number of unsuccessful approaches to the electronics case before removing the iPods from it and leaving the aisle in the opposite direction. See, e.g., *Scott v. Harris*, 550 U. S. 372, 380 (III) (A) (127 SCt 1769, 167 LE2d 686) (2007) ("where opposing parties tell two different stories, one of which is blatantly contradicted by" a videotape of the incident, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). As a result, the question whether Smith actually

16

saw the second man take the iPods out of the case, her failure to report which would raise a reasonable suspicion that she was working with the thieves, remains in dispute, thus "leaving to the jury the task of determining if the circumstances were such so as to create an honest and reasonable belief [in Johnson's mind] that there was probable cause" for arresting Smith. *Wolf Camera*, 253 Ga. App. at 259 (1) (b) (affirming jury verdict when a question of fact had been raised as to whether plaintiff had been arrested without probable cause).

Because Smith has shown that questions of fact remain as to her claim for false imprisonment arising from her arrest by Johnson, we reverse the trial court's grant of summary judgment as to that claim.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Boggs, J., concur*.