**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 26, 2024**

# In the Court of Appeals of Georgia

A23A1758. CARNEGAY v. WAL-MART STORES, INC. et al.

HODGES, Judge.

Tyrone Carnegay originally sued WalMart Stores, Inc. ("Walmart"), loss prevention officer Ariana Boyd, and off-duty police officer Trevor King for battery and false imprisonment in April 2016, after King confronted Carnegay at an Atlanta Walmart in October 2014 and repeatedly struck him with a baton over a suspected shoplifted tomato. In a prior appearance of this case in this Court, we affirmed that portion of the State Court of Fulton County's order granting Walmart's motion for summary judgment on Carnegay's claim of battery for King's actions,[1] but vacated

---

[1] Carnegay did not challenge the trial court's order granting Walmart's summary judgment motion based upon Carnegay's allegations of battery arising from Boyd's actions.

that portion of the order granting Walmart's motion on Carnegay's claims of false imprisonment arising from Boyd's and King's actions, as well as his claims for attorney fees and punitive damages. See *Carnegay v. WalMart Stores, Inc.*, 353 Ga. App. 656 (839 SE2d 176) (2020) ("*Carnegay I*").

Following our remand, Carnegay's voluntary dismissal of the original action, and his filing of a renewal action in the Superior Court of Fulton County, Carnegay now appeals from the trial court's order granting Walmart's motions for partial summary judgment and to bifurcate Carnegay's remaining claims against King individually and Walmart. Carnegay contends that the trial court erred in ruling: (1) that evidence of battery, committed by King, would be inadmissible in his claim for false imprisonment against Walmart; (2) that Carnegay's claim of battery against King individually should be bifurcated from his claim of false imprisonment against Walmart; and (3) that he is not entitled to OCGA § 51-12-5.1 punitive damages for false imprisonment as his only injury was to his "peace, happiness and feelings" under OCGA § 51-12-6. For the following reasons, we affirm.

> Our standard of review for motions for summary judgment is well settled:
>
> Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Grizzle v. Norsworthy*, 292 Ga. App. 303, 303-304 (664 SE2d 296) (2008). In compliance with that standard in *Carnegay I*, we noted that evidence demonstrated the following:

Carnegay was shopping for various groceries at Walmart. After he paid for his items, he thought he had been overcharged for a tomato. He returned to the produce department to weigh the tomato and then planned to go . . . back to the cashier for a refund. However, the cashier's line was long, and Carnegay decided not to pursue the overpayment. Instead, he walked through the store toward the exit.

Boyd was watching from the loss prevention office and noticed Carnegay put the tomato in the bag and then walk toward the exit. She had not seen him pick the item up and did not know whether he had paid for it. Boyd informed King that she thought Carnegay might be shoplifting, and the two headed to the exit to intercept Carnegay.

As he approached the door, Carnegay observed Boyd, but she did not speak to him or identify herself as a Walmart employee. Carnegay then encountered King, who was waiting in the vestibule with his baton at his side. As he approached King, Carnegay said, "What's going on chief."

3

King asked Carnegay where he was going, and Carnegay responded that he was going home. As Carnegay tried to push past King, King ordered him to get on the ground and placed Carnegay under arrest for obstruction for failing to comply with King's instructions. King then grabbed his baton and began striking Carnegay. King struck Carnegay a total of seven times, breaking his leg. After the beating, King grabbed Carnegay's arms and handcuffed him before searching his pockets and finding the receipt.

(Footnote omitted.) 353 Ga. App. at 657. As stated, we affirmed that portion of the State Court of Fulton County's order granting Walmart's motion for summary judgment on Carnegay's claim of battery for King's actions, but vacated that portion of the order granting Walmart's motion on Carnegay's claims of false imprisonment arising from Boyd's and King's actions, as well as his claims for attorney fees and punitive damages.

On remand, Carnegay dismissed Boyd, King, and Walmart, and proceeded solely against Wal-Mart Stores East, L. P. Wal-Mart Stores East "moved in limine to exclude evidence of the battery at trial[,]" and during a pretrial conference after the close of discovery, the State Court of Fulton County ruled that evidence of battery was inadmissible on Carnegay's false imprisonment claims. When Carnegay's counsel

4

orally moved to add King back as a party defendant during the conference in order to revive Carnegay's battery claim, the state court judge denied the motion. Carnegay's counsel then announced that he would voluntarily dismiss his case in the State Court of Fulton County without prejudice and, shortly thereafter, filed a renewal action in the Superior Court of Fulton County naming Walmart, Wal-Mart Stores East, L. P. (now, collectively, "Walmart"), Boyd, and King as parties and including causes of action for battery against King individually and false imprisonment against Walmart for Boyd's and King's actions.

Walmart then moved for partial summary judgment in the renewal action, arguing that this Court had already determined that Walmart did not cause Carnegay's injuries based upon King's battery and that, because Carnegay's only remaining claim was for false imprisonment, he could not receive OCGA § 51-12-5.1 punitive damages pursuant to OCGA § 51-12-6. The trial court agreed and granted Walmart's motion. In addition, Walmart moved to bifurcate Carnegay's trial between his claims for battery against King individually and his claims for false imprisonment against the remaining defendants and to "uphold" the State Court of Fulton County's ruling on Walmart's motion in limine in the original action. The trial court granted the motion

5

to bifurcate, concluding that "bifurcation of the claims against the Walmart defendants from the claims against defendant King is necessary to avoid the introduction of irrelevant, unduly prejudicial, and inadmissible evidence during the trial of the [f]alse [i]mprisonment claim against the Walmart defendants." The trial court reserved ruling on the motion to "uphold" the State Court of Fulton County's order on Walmart's motion in limine in the original action until the time of trial. This appeal follows.

1. In two interrelated enumerations of error, Carnegay contends that the trial court: (1) erred by excluding evidence of his detention, "including all actions and their consequences during the course of the detention[;]" and (2) disregarded "the longstanding rule that a defendant who commits one tort — in this case false imprisonment — can be held liable for damages caused by intervening conduct (in this case battery) of a second tortfeasor if the actions of the second tortfeasor are a natural and foreseeable consequence of forces set into motion by the [original] defendant." Although listed separately, these enumerations present permutations of the same question — whether Carnegay may introduce evidence of King's battery in his claim for false imprisonment against Walmart arising from Boyd's and King's actions. In

essence, Carnegay argues that evidence of Walmart's *potential* liability for battery should be admissible *generally* for all of his claims against Walmart. However, the question of Walmart's potential liability for battery has been decided adversely to Carnegay, and he may not now relitigate that issue by framing it in terms of evidence admissibility in the present appeal.

In *Carnegay I*, we held that

> the record clearly shows that, at the time of the battery, King was acting only in his capacity as a police officer. Although Carnegay argues that the jury could find that Boyd and Walmart caused the battery, there is no evidence in the record from which a jury could determine that King was acting in any capacity other than that of a police officer at the time of the battery. In his deposition, King stated that he placed Carnegay under arrest for obstruction before he started striking him. Because he was acting solely in his capacity as an Atlanta police officer, and there is no evidence from which a jury could conclude that Boyd or Walmart directed the conduct, *Walmart cannot be liable for the battery*.

(Emphasis supplied.) 353 Ga. App. at 660 (1) (a). It is well settled that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." OCGA § 9-11-60 (h). Here, Carnegay's enumerations

7

represent a backdoor attempt, by expressing the argument in terms of evidence admissibility rather than liability, to nonetheless relitigate our prior decision that Walmart is not liable for King's battery. Because Walmart has no liability for battery, it follows that Carnegay's first two enumerations present nothing for our review.

2. Next, Carnegay asserts that the trial court erred in bifurcating his claims of battery and false imprisonment against King and his claim of false imprisonment against the Walmart defendants. We find no abuse of discretion.

In Carnegay's renewal action, Wal-Mart moved to bifurcate Carnegay's claims for battery against King individually and for false imprisonment against Walmart, arguing that this Court had already determined that Carnegay cannot recover for battery against Walmart and that "any mention of the battery in front of the jury would immediately insert harmful, irrelevant, unduly prejudicial, and inadmissible evidence that cannot be remediated by a curative instruction[.]" The trial court agreed, finding that evidence of the battery "would be irrelevant under OCGA § 24-4-402 and unduly prejudicial under OCGA § 24-4-403" in Carnegay's trial against Walmart for false imprisonment. As a result, the trial court concluded that "bifurcation of the claims against the Walmart defendants from the claims against .

. . King is necessary to avoid the introduction of irrelevant, unduly prejudicial, and inadmissible evidence during the trial of the [f]alse [i]mprisonment claim against the Walmart defendants."

OCGA § 9-11-42 (b) provides that trial courts, "in furtherance of convenience or to avoid prejudice, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue, or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." "Severance of claims is largely a matter of discretion for the trial judge, and absent clear and manifest abuse of that discretion, it will not be interfered with on appeal." (Citation and punctuation omitted.) *Kessler v. Multibank 2009-1 CRE Venture*, 324 Ga. App. 474, 475 (751 SE2d 121) (2013).

As a threshold matter, with regard to Walmart's partial summary judgment motion, the trial court concluded that

> [s]ince the Court of Appeals has already held that Walmart cannot be liable for the battery, then it follows that the Walmart Defendants cannot be liable for damages caused by that battery.[2] As such, this Court finds

---

[2] See OCGA § 9-11-60 (h); *Roth v. Gulf Atlantic Media of Ga.*, 244 Ga. App. 677, 679 (1) (536 SE2d 577) (2000) (holding that, "if [a] party chooses to appeal [a grant of partial summary judgment in an original action], then the appellate decision on the

that the Walmart Defendants are entitled to partial summary judgment on [Carnegay's] claim for damages sustained during the battery, including all compensatory damages for [his] physical, mental and emotional pain and suffering caused by the battery, all past and future medical expenses and lost wages caused by the battery, and any other damages that were caused by the battery. The Walmart Defendants do not seek, and are not entitled to, summary judgment on [Carnegay's] mental and emotional pain and suffering caused by the initial shoplifting detention before King placed [Carnegay] under arrest.

Against that backdrop, we turn to the question of bifurcation.

(a) *False Imprisonment.* Under Georgia law, false imprisonment is defined as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. As a result, the only essential elements of a claim for false imprisonment "are a detention of the person of another for any length of time, and the unlawfulness of that detention." (Citation and punctuation omitted.) *Smith v. Wal-Mart Stores East, LP*, 330 Ga. App. 340, 343 (2) (a) (765 SE2d 518) (2014). Similarly, "[t]he imprisonment need not be for more than an appreciable length of time, and it is not necessary that any damage result from it

_____

summary judgment ruling is binding [in the renewal action] under OCGA § 9-11-60 (h)").

other than the confinement itself[.]" (Citation and punctuation omitted.) *J. H. Harvey Co. v. Speight*, 178 Ga. App. 812, 813 (344 SE2d 701) (1986). Moreover,

> [a] detention need not consist of physical restraint, but may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries.

(Citation omitted.) *Smith*, 330 Ga. App. at 343 (2) (a).

In evaluating Carnegay's claims for false imprisonment in *Carnegay I*, we observed that "[t]here is no dispute that Carnegay was detained. King placed his hand on Carnegay's shoulder and prevented him from exiting the store, and he did so with his baton extended in his hand." 353 Ga. App. at 661 (1) (b). We also noted that "King asked Carnegay where he was going, and Carnegay responded that he was going home" before Carnegay attempted to walk past King. Id. at 657. Therefore, assuming arguendo Carnegay's detention was unlawful, the tort of false imprisonment would have been complete with King's initial detention of Carnegay. See *J. H. Harvey Co.*, 178 Ga. App. at 813 (holding that "the tort [of false imprisonment] is complete with even a brief restraint of the plaintiff's freedom") (citation and punctuation omitted).

(b) *Battery*. As to battery, "[a]ny violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered." OCGA § 51-1-14. "Battery includes causing an injury, and any unlawful touching that would be offensive to a reasonable person." (Footnotes and punctuation omitted.) Charles R. Adams, III, Ga. Law of Torts, § 7:3 (database updated Nov. 2023). This Court previously noted with regard to Carnegay's claim for battery against Walmart in *Carnegay I* that the evidence revealed that

> [a]s Carnegay tried to push past King, King ordered him to get on the ground and placed Carnegay under arrest for obstruction for failing to comply with King's instructions. King then grabbed his baton and began striking Carnegay. King struck Carnegay a total of seven times, breaking his leg.

353 Ga. App. at 657. We also held that, "[b]ecause [King] was acting solely in his capacity as an Atlanta police officer, and there is no evidence from which a jury could conclude that Boyd or Walmart directed the conduct, Walmart cannot be liable for the battery." Id. at 660 (1) (a).

(c) *Analysis*. With these holdings in mind, we conclude that, to the extent Carnegay's detention was unlawful (which is a matter which must be resolved by a

jury), the tort of false imprisonment was completed with King's initial detention of Carnegay. When Carnegay attempted to push past King, King made the decision in his capacity as a police officer to arrest Carnegay and then strike Carnegay with his baton. At that point, the false imprisonment had been completed, and we have already ruled that Walmart cannot be liable for King's ensuing battery. The trial court correctly concluded that "[t]he chain of causation was broken when King began to act in his capacity as a police officer and Walmart can have no liability for the claims or injuries that resulted after King acted in his capacity as an officer." What is left are Carnegay's separate claims for battery against King individually and for false imprisonment against Walmart.

Furthermore, we agree with the trial court's rationale that the disturbing evidence of King's battery, which we recounted in *Carnegay I* and which occurred after the completion of King's initial detention of Carnegay, would not be relevant to a decision as to Walmart's potential liability for false imprisonment. See OCGA §§ 24-4-401 ("the term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"), 24-4-402

13

("Evidence which is not relevant shall not be admissible."). In other words, King's subsequent beating of Carnegay, for which we have already determined that Walmart is not liable, would not shed any light on whether Walmart may be liable for false imprisonment for the initial actions of Boyd and King. Even were the evidence relevant, the evidence would prove unduly prejudicial to Walmart and would be excludable on that basis as well. See OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."); see also *Bennett v. Moore*, 312 Ga. App. 445, 459-460 (4) (a) (718 SE2d 311) (2011) (concluding that graphic evidence that was only relevant to specific claim should have been excluded from jury's consideration of separate claim). To avoid the introduction of such inflammatory evidence and the realistic potential for undue prejudice, the trial court bifurcated Carnegay's trial between his claims for battery against King individually and for false imprisonment against Walmart. See OCGA § 9-11-42 (b). We conclude that the trial court did not abuse its discretion in bifurcating Carnegay's claims. See *Moresi v. Evans*, 257 Ga. App. 670, 672-673 (1) (572 SE2d 327) (2002).

3. Finally, Carnegay asserts that the trial court erred by concluding, allegedly contrary to our holding in *Carnegay I*, that Carnegay is not entitled to punitive damages under OCGA § 51-12-5.1. We disagree.

In *Carnegay I*, we cited OCGA § 51-12-5.1 (b) and held that, "[b]ecause we conclude that the false imprisonment claims survive summary judgment, any resolution of the punitive damages claim . . . is improper." 353 Ga. App. at 665-666 (4).[3] On remand, Carnegay voluntarily dismissed his complaint in the State Court of Fulton County and filed a renewal action in the Superior Court of Fulton County. In the renewal action, Walmart moved for partial summary judgment as to the availability of punitive damages on Carnegay's claim for false imprisonment, arguing that OCGA § 51-12-6 precluded punitive damages for Carnegay's claim because his only damages were to his "peace, happiness, and feelings." The trial court agreed and granted Walmart's motion.

---

[3] Notably, we took no position on Carnegay's entitlement to punitive damages; instead, we simply held that, in effect, summary adjudication of a derivative claim was "improper" in view of our reversal of summary judgment on Carnegay's claims of false imprisonment. *Carnegay I*, 353 Ga. App. at 666 (4); see also *Cleveland v. Team RTR2, LLC*, 359 Ga. App. 104, 110 (3) (854 SE2d 756) (2021) (noting that "derivative claims for punitive damages and attorney fees survive summary judgment where underlying tort survived") (citation omitted). Indeed, that was the basis of the trial court's order dismissing the claim for punitive damages in the first place.

"In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors." OCGA § 51-12-6. Since it was last amended in 1987, OCGA § 51-12-6 has further provided that "punitive damages under Code Section . . . 51-12-5.1 shall not be awarded." See Ga. L. 1987, p. 915, § 6.[4] False imprisonment has been categorized as a tort "where the entire injury is to the peace, happiness, or feelings of the plaintiff. . . ." See *Wilson v. McLendon*, 225 Ga. 119, 121-122 (166 SE2d 345) (1969).

Here, Walmart moved for partial summary judgment on Carnegay's claims for false imprisonment because the evidence relevant to Carnegay's detention showed

---

[4] Although Carnegay refers to OCGA § 51-12-6 as a "[v]indictive damages" provision, that characterization applies "outdated terminology" that has not been appropriate since the statute was last amended in 1987. See *Little v. Chesser*, 256 Ga. App. 228, 231 (2) (568 SE2d 54) (2002) ("Ga. L. 1987, p. 915, § 6, codified as OCGA § 51-12-6, repealed vindictive damages as a punitive damage and recreated such damages to the peace and happiness as a general damage, measured in the enlightened consciences of impartial jurors.") (citation and punctuation omitted).

that his only injury was to his "peace, happiness, and feelings."[5] See OCGA § 51-12-6.

We characterized the evidence thusly:

> There is no dispute that Carnegay was detained. King placed his hand on Carnegay's shoulder and prevented him from exiting the store, and he did so with his baton extended in his hand. See *Smith*, 330 Ga. App. at 343 (2) (a) ("A detention … may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit[.]").

*Carnegay I*, 353 Ga. App. at 661 (1) (b). We further noted additional, conflicting evidence that either Boyd or King verbally directed Carnegay to the loss prevention office. Id. However, even when viewed in a light most favorable to Carnegay, this

---

[5] It is not material that Walmart did not raise this argument in Carnegay's original action. Compare *The Higbee Co. v. Solomon*, 334 Ga. App. 884, 887 (780 SE2d 490) (2015) (physical precedent only) (holding that defendant waived defense that OCGA § 51-12-6 barred punitive damages in false imprisonment claim where defendant failed to object until after jury verdict). Once Carnegay dismissed the original action and filed the renewal action, Walmart had the right to raise the argument in what was, effectually, a de novo action. See generally *SunTrust Bank v. Lilliston*, 302 Ga. 840, 843 (809 SE2d 819) (2018) ("In a renewal action, . . . the defendant . . . can interpose such defensive pleadings as he may deem best.") (citation, punctuation, and emphasis omitted).

evidence gives rise to nothing more than injury to Carnegay's peace, happiness, and feelings.[6] See OCGA § 51-12-6. As a result, we find no error.

*Judgment affirmed. Mercier, C. J., and Miller, P. J., concur.*

------

[6] That is not to say that Carnegay is without recourse. The measure of damages for Carnegay's false imprisonment claims includes any amount awarded for injury to his "peace, happiness, or feelings" bounded only by the "enlightened consciences of impartial jurors" — it simply does not include punitive damages under OCGA § 51-12-5.1 as a matter of law. OCGA § 51-12-6.