## A03A1083. REED v. DEKALB COUNTY et al.
### (589 SE2d 584)

ADAMS, Judge.

After her arrest for obstructing or hindering a law enforcement officer, Patti Reed sued DeKalb County, Sergeant L. C. Golar, and Captain J. E. Pearson, Sr. for false arrest, false imprisonment, and malicious prosecution. The trial court determined that sovereign immunity barred Reed's tort claims against the county and found that official immunity foreclosed the claims against the two police officers. In this appeal, Reed contends that questions of disputed material fact remain for jury resolution on her claims against the officers.[1]

On appeal from a grant of summary judgment, this court reviews the evidence de novo and considers the evidence and all reasonable conclusions and inferences therefrom in a light most favorable to the

---

[1] Apparently conceding that sovereign immunity bars her claims against the county, Reed admits "there is no statutory authority promulgated by the General Assembly which would permit Appellant's claims against DeKalb County."

nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). So viewed, the evidence shows that on March 28, 2000, DeKalb County Police Detective Golar was dispatched to Atherton Elementary School to respond to a complaint that a student had brought a weapon to school. While Golar was completing his paperwork on the incident, two female students were brought to the assistant principal's office for fighting. Golar testified that "[o]ne of the female students had a patch of hair missing and a bloody scalp. I told Ms. Mapp [(the assistant principal)] that the two students were going to be arrested." Golar testified that when Mapp telephoned Reed, the principal at Atherton Elementary, Mapp learned that Reed "did not want anyone to go to jail." Golar and Mapp began doing the paperwork for the arrests and Mapp contacted the girls' parents. While Golar was inside Mapp's office speaking with the mother of one of the girls, Reed arrived and announced, "no one is going to jail because I am the principal and I decide who is going to jail." When Reed refused to allow Golar to arrest the two students, Golar requested assistance from a supervisor. Captain Pearson, then a lieutenant, proceeded to Atherton Elementary where he interviewed Golar and Reed separately. Pearson testified that Reed "told me that she had locked Sgt. Golar out of Ms. Mapp's office; that she had taken a handcuffed juvenile away from Sgt. Golar and into her own office; that she closed the door on Sgt. Golar; and that she did not want the two juveniles to go to Juvenile." Pearson testified that Reed's account of events "was essentially the same as [that] related to me by Sgt. Golar." After completing his own assessment of the situation, Pearson "confirmed to [Reed] that she was under arrest and that she would be transported to Police Headquarters." Pearson informed an assistant school superintendent that Reed "was going to be arrested based on her actions." Another officer transported the two students to juvenile court. Pearson took custody of Reed.

Later that same day, Golar obtained a criminal warrant charging Reed with "hindering the arrest of two students for fighting and closing a door on the officer's foot and arm." A handwritten entry indicates the warrant was dismissed on March 30. Gwendolyn R. Keyes, the Solicitor-General of DeKalb County, conducted an independent review of the criminal case against Reed. Keyes testified that "[m]y review of the file convinced me that the officers had probable cause to arrest Plaintiff for the obstruction of an officer as he attempted to arrest a minor at the school. My review convinced me that this was a case wherein there was sufficient evidence to draw an accusation and proceed with the criminal prosecution of Plaintiff." To avert criminal prosecution, Keyes held a meeting in her office on April 12, attended by Golar, Pearson, Reed, Reed's attorneys, school

board members and their counsel, and members of the Department of Public Safety. Keyes testified:

> In that meeting, those present discussed and signed a Consent Agreement relating to a clarification of the policy regarding arrests on school property. The Consent Agreement provided that the state would not proceed against Plaintiff criminally if the policy regarding arrests on school property had been clarified by August 15, 2000.

In a May 25 letter, Keyes advised Reed that she need not appear for arraignment in June. Keyes testified that meanwhile, unbeknownst to her, "an Assistant Solicitor in my office conducted an independent investigation and determined that there was probable cause to draw an accusation on the criminal charge against Plaintiff." Unaware of the negotiated agreement, this assistant solicitor-general drafted a two-count accusation against Reed. After discovering the mistake, on July 5, Keyes sought and obtained a nolle prosequi order for those charges, stating "[t]his case was filed in error." Keyes explained that the criminal prosecution undertaken by her office was "simply an oversight of which I was unaware at the time, resulting from an absence of communication."

In directing summary judgment, the trial court noted that under OCGA § 15-11-45 (a) (3), as children, the two female students, could be taken into custody by a law enforcement officer, provided that there were reasonable grounds to believe that the students had committed a delinquent act or were unruly. The court stated:

> The Plaintiff does not dispute the fact that Defendant Golar knew the two female students had been involved in an altercation. Thus, he had reasonable ground to believe that at least one or both of the students had committed a delinquent act, i.e. the offense of simple battery. While the wisdom of arresting two students waiting to see the principal because they are in trouble for fighting is questionable, the authority to effectuate the arrest is not.

After finding Golar had the authority to lawfully arrest the two students, the trial court decided that "the Plaintiff's conduct clearly provided a sufficient basis for the warrantless arrest for obstruction." Finding no evidence of actual malice on the part of either officer, the trial court entered summary judgment.

Reed contends that the trial court erred in granting summary judgment to the officers. She argues that the decision to arrest her and the execution of that arrest "were purely ministerial acts" done in a tortious or negligent manner. Reed asserts that questions of fact

exist as to the reasonableness of Golar's belief that the two girls had committed a delinquent act or were unruly children within the meaning of OCGA § 15-11-2 (12) (I). She claims that Golar had no "immediate knowledge" of the altercation and that no offense as contemplated by OCGA § 17-4-20 was committed in the "officer's presence." Reed asserts that as the school principal, she "had a legal and moral duty to insist that Appellee Golar not arrest the children." Reed claims that she did not hinder or obstruct a law enforcement officer in the lawful discharge of his duties "for [the] simple reason that the officer was acting illegally when he arrested the two young girls."

The doctrine of official immunity, also known as qualified immunity, affords limited protection to public officers and employees sued in their personal capacity. *Gilbert v. Richardson*, 264 Ga. 744, 750 (452 SE2d 476) (1994). Official or qualified immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption." *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995). Stated succinctly,

> a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Footnotes omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). Although official immunity does not apply to purely ministerial duties, public officials are immune from individual liability for discretionary acts undertaken in the course of their duties and performed without wilfulness, malice, or corruption. *Schmidt v. Adams*, 211 Ga. App. 156 (438 SE2d 659) (1993). Whether a duty is ministerial or discretionary turns on the character of the specific act itself. Id. at 157. Unlike a ministerial act, a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citation and footnote omitted.) *Harvey v. Nichols*, 260 Ga. App. 187, 191 (1) (581 SE2d 272) (2003).

Contrary to Reed's argument, the decision to effectuate a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the officer. See *Outlaw v. Nasworthy*, 250 Ga. App. 362, 364 (2) (551 SE2d 785) (2001). Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies. See *Woodward v.*

*Gray*, 241 Ga. App. 847, 851-852 (c) (527 SE2d 595) (2000). Absent malice or intent to injure, no liability attaches to the officer's exercise of his lawful discretion even when the decision to effectuate the arrest is flawed. See *Todd v. Kelly*, 244 Ga. App. 404, 407 (535 SE2d 540) (2000). In the context of official immunity, "actual malice" means a deliberate intent to do wrong. *Merrow v. Hawkins*, 266 Ga. 390, 392 (2) (467 SE2d 336) (1996).

To avoid summary judgment, Reed had to offer some evidence that Golar and Pearson acted with actual malice or deliberate intent to injure her. See *Outlaw*, 250 Ga. App. at 364 (2). This she failed to do. Even assuming that their actions in arresting Reed may have been misguided, here, as in *Todd*, "there is no evidence that they were taken with actual malice." *Todd*, 244 Ga. App. at 407 (1). The entry of summary judgment was correct. See *City of Atlanta v. Heard*, 252 Ga. App. 179, 182-183 (2) (555 SE2d 849) (2001); *Outlaw*, 250 Ga. App. at 365 (2).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 22, 2003 —
RECONSIDERATION DENIED NOVEMBER 13, 2003 — 

*Taylor & Viers, Richard T. Taylor*, for appellant.
*Elizabeth B. Taylor*, for appellees.