[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10867

Non-Argument Calendar

_____

KHANAY YANCEY,

Plaintiff-Appellee,

*versus*

GREGORY TILLMAN,
in his individual capacity as an officer for the Clayton County Po-
lice Department,

Defendant-Appellant,

CLAYTON COUNTY, GEORGIA,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-03269-JPB

_____

Before JILL PRYOR, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

According to Khanay Yancey's amended complaint, Clayton County Police Officer Gregory Tillman broke down Yancey's front door while responding to a civil matter, forced her to the ground, and roughly handcuffed her despite Yancey telling Tillman she would wait inside her home until his supervisor arrived and warning him of her medical conditions. Tillman remained on top of Yancey with a knee on her back, and Yancey had a seizure and still suffers from pain. She sues Tillman under 42 U.S.C. § 1983 and Georgia law. Accepting her allegations as true, as we must at the motion to dismiss stage,[1] we affirm the denial of qualified

_____

[1] "When reviewing the denial of a qualified immunity defense asserted in a motion to dismiss, appellate review is limited to the four corners of the complaint." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotation marks omitted). We accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

immunity on three of the § 1983 claims and of official immunity on the state law claims, but we reverse the denial of qualified immunity on the federal malicious prosecution claim.

## I. BACKGROUND

Yancey's amended complaint alleges the following. In July 2019, Yancey invited a friend and her daughter to temporarily stay at her home. Yancey reluctantly allowed her friend's boyfriend, Kevin Clark, to stay a few days. Ten days later, Yancey's friend and Clark had a disagreement. Yancey, no longer feeling safe with Clark in her home, told him to leave, and he left on July 14, allegedly taking all his belongings with him.

The next morning, Clark arrived unannounced, and Yancey refused to let him in her home. Clark called the police and reported he had been staying at the residence and was being denied access to retrieve certain belongings. Tillman responded to the call early that afternoon, and Clark told Tillman he had left a TV stand and a few other small items at the residence.

Tillman knocked on Yancey's door, and Yancey, "admittedly agitated," opened the door. She never left her home, and she informed Tillman that Clark had removed his belongings the prior day and was no longer welcome. Tillman shouted at Yancey to "stop" and stated, "[I]f you're not going to listen, I'm just going to do what I need to do." Yancey told Tillman he was "out of line" and asked her minor son to call the Clayton County Police Department (CCPD) to have a supervisor come to her home. Tillman

refused to provide his name and badge number. While on the phone, Yancey explained to Tillman that Clark was not a lawful resident, and Tillman responded that Clark "can come and go as [he] please[s] until [he] is properly evicted."

Yancey informed Tillman a supervisor was en route to her home and that she was closing the door until the supervisor arrived. She closed the door despite Tillman's attempt to hold it open. From behind the closed door, Yancey told Tillman he would stand outside her door until his supervisor came.

Tillman did not tell Yancey to open the door. Without warning, he broke Yancey's door off its frame, pulled her arms behind her back, swept her legs, knocked her to the ground, and placed a knee on her back. He roughly handcuffed her using excessively tight restraints, which he was told were causing her pain and injury. Yancey's son repeatedly told Tillman that Yancey suffers from "a lot of health problems," and Yancey advised she has a seizure disorder and a restrictive lung disease. Still, Tillman remained on top of a handcuffed and prone Yancey with his knee on her back. Yancey began to hyperventilate, her vision became blurry, and she had a seizure.

Yancey's handcuffs were finally removed when the police supervisor arrived, and emergency medical services came to care for Yancey. She declined transportation to the hospital because there were children at the home under her care, but she sought medical treatment later that day.

Yancey also alleges, based a conversation captured on a body camera, the supervisor asked Tillman why he kicked the door down to which Tillman replied, "[W]e had the charge of criminal trespass." When the supervisor explained that only meant Clark could get in, Tillman stated he feared for his safety because he "didn't know what was behind the door." Tillman also stated he told Yancey to open her door before breaking it down.

Yancey was informed she would receive citations for misdemeanor obstruction and criminal trespass-family violence in lieu of custodial arrest. These charges were dropped or dismissed shortly after her arrest.

Yancey alleges the CCPD Internal Affairs Board determined Tillman incorrectly believed a crime of Criminal Trespass-Family Violence had occurred when the matter was purely civil. The Board found Tillman violated departmental policy when he made forced entry into the residence and arrested her. She alleges the Clayton County Chief of Police determined Tillman did not have probable cause for a family violence charge against Yancey nor did he have probable cause to arrest Yancey based on the information he received. The police chief also concluded Tillman's decision to force entry based on exigent circumstances was unfounded.

Yancey filed suit in state court, which was removed to federal court. In relevant part, Yancey's amended complaint asserts claims under § 1983 for (1) unlawful entry, (2) excessive force, (3) false arrest, and (4) malicious prosecution. First, she asserts Tillman forcibly entered her home without a warrant, without her

consent, and without the presence of exigent circumstances that would permit warrantless entry.  Second, she asserts a reasonable officer in Tillman's position would have known forcing her to the ground, placing a knee on her back, and roughly placing her into excessively tight handcuffs was not a reasonable application of force.  Third, she asserts Tillman did not have probable cause to arrest her or cite her in lieu of custodial arrest.  Fourth, she asserts Tillman initiated a criminal prosecution against her to manufacture a justification for his other illegal actions when he knew or should have known there was no probable cause to believe she had committed a crime.  Yancey also asserts state law claims for assault, battery, intentional infliction of emotional distress, malicious arrest, malicious prosecution, and false imprisonment.  She asserts Tillman's conduct was reckless, willful, wanton, malicious, and unlawful.

Tillman moved to dismiss Yancey's complaint, asserting he was entitled to qualified immunity on Yancey's § 1983 claims and to official immunity on her state law claims.  The district court denied the motion to dismiss, and Tillman appeals from that denial.

## II. DISCUSSION

Tillman contends the district court erred by being too general in its application of the clearly-established-law prong of the

qualified immunity analysis and by applying an incorrect standard of malice to the official immunity analysis.[2]

### A. Qualified Immunity on Federal Claims

Tillman is not entitled to qualified immunity on the unlawful entry, false arrest, and excessive force claims. A right may be clearly established for qualified immunity purposes where an officer's conduct was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009).

"Unless a warrant is obtained or an exigency exists, any physical invasion of the structure of the home, by even a fraction of an inch, [is] too much." *Bailey v. Swindell*, 940 F.3d 1295, 1302 (11th Cir. 2019) (quotation marks omitted); *see also Payton v. New York*, 445 U.S. 573, 585 (1980). Exceptions are few and carefully drawn. *McClish v. Nugent*, 483 F.3d 1231, 1240 (11th Cir. 2007). Tillman undisputedly did not have a warrant or consent to enter Yancey's home, and his assertion there were exigent circumstances falls flat. Yancey never left her home, and, while agitated, nothing indicates she was aggressive, threatening, or a flight risk. Tillman

---

[2] We have jurisdiction to review the denial of a motion to dismiss based on qualified immunity and Georgia official immunity. *Jones v. Fransen*, 857 F.3d 843, 849 (11th Cir. 2017). To avoid confusion, we will refer to Georgia's doctrine as "official immunity" although it is also sometimes called "qualified immunity." *See Reed v. DeKalb Cty.*, 589 S.E.2d 584, 587 (Ga. Ct. App. 2003). Our review of the district court's denial of these types of immunity is *de novo*. *Jones*, 857 F.3d at 850.

had fair warning his forcible entry and arrest were unlawful in 2019. *See Bailey*, 940 F.3d at 1303; *McClish*, 483 F.3d at 1248.

Similarly, we have repeatedly held a police officer is denied qualified immunity if he "uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) (collecting cases). Taking Yancey's allegations as true, Tillman's actions were so plainly unnecessary and disproportionate to restrain a woman who merely retreated into her home while waiting for a CCPD supervisor to arrive that "no reasonable officer could have had a mistaken understanding as to whether [the] particular amount of force [was] legal in the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002) (quotation marks omitted).

However, we reverse the district court's denial of Tillman's motion to dismiss as to Yancey's § 1983 malicious prosecution claim. Even if Yancey stated a claim for the tort of malicious prosecution,[3] she failed to allege she was seized in relation to the

---

[3] The traditional elements of a malicious prosecution claim are (1) an action or proceeding instituted without probable cause; (2) where "the 'motive in instituting' the suit 'was malicious'"; and (3) in which there was an acquittal or discharge of the accusation. *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022). The Supreme Court explained "malicious" "was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice." *Id.* Tillman does not argue he had probable cause to arrest or cite Yancey for obstruction and criminal trespass, and the charges were dismissed or dropped.

prosecution in violation of her Fourth Amendment rights. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234-35 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020). Malicious prosecution "requires a seizure pursuant to legal process." *Williams*, 965 F.3d at 1158 (quotation marks omitted). "In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Kingsland*, 382 F.3d at 1235.

Yancey did not allege she was seized following an arraignment, indictment, or probable-cause hearing, nor did she allege Tillman made false statements in a warrant application. *See Williams*, 965 F.3d at 1158-59. In fact, the charges against Yancey were apparently dropped or dismissed shortly after her warrantless arrest, and she was not subject to a "significant, ongoing deprivation of liberty." *Kingsland*, 382 F.3d at 1236. Consequently, the arrest alleged on July 15, 2019, "cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest." *Id.* at 1235 (quotation marks omitted). Absent a seizure related to the prosecution, Yancey does not have a cognizable federal claim for malicious prosecution, and Tillman is entitled to qualified immunity on this claim only. *See id.* at 1235-36.

## B. *Official Immunity on State Law Claims*

As for the state law claims, public officials do not enjoy official immunity under Georgia law when "they act with actual malice or with actual intent to cause injury in the performance of their

official functions." Ga. Const. art. I, § 2, ¶ IX(d); *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007). "Ill will alone is insufficient to establish actual malice; [Yancey] must show that [Tillman] acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm her." *Anderson v. Cobb*, 573 S.E.2d 417, 419 (Ga. Ct. App. 2002).

Tillman's alleged conduct is sufficiently egregious to meet this standard. It would have been apparent to any reasonable officer the alleged use of force against Yancey was excessive and illegal and that lying about the circumstances to fabricate charges justifying the use of force is wrongful. *Compare Gardner v. Rogers*, 480 S.E.2d 217, 219-221 (Ga. Ct. App. 1996) (holding an officer was not entitled to official immunity as a matter of law where the officer used an excessive amount of force to conduct a warrantless arrest and discussed with a colleague how to devise a ground on which to arrest the plaintiff), *with Selvy v. Morrison*, 665 S.E.2d 401, 405-06 (Ga. Ct. App. 2008) (explaining the officers "may have shown poor judgment, rude behavior, and reckless disregard for the rights and safety of others" but not actual malice where the officers were present due to a warrant and there was no evidence the officers "fabricated or even schemed to fabricate a charge"). At least at the motion to dismiss stage, Yancey has alleged enough to overcome official immunity on the state law claims.

## III. CONCLUSION

We **REVERSE** the district court's denial of Tillman's motion to dismiss only as to Yancey's § 1983 malicious prosecution claim

22-10867              Opinion of the Court                11

and **AFFIRM** the denial of the motion to dismiss on the remaining claims.