**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 24, 2025**

# In the Court of Appeals of Georgia

A25A1118. SMITH v. GRANT et al.

BARNES, Presiding Judge.

Following her arrest for battery and aggravated assault, and incarceration for approximately one week, Deborah B. Smith filed a complaint for false imprisonment, false arrest, and malicious prosecution against Bill Grant, individually and in his official capacity as Mayor of the City of Canton; Courtney Rogers, individually and in her official capacity as a police officer with the City of Canton Police Department; and Stephen Merrifield, individually and in his official capacity a Chief of Police of the Canton Police Department (collectively, "the defendants"). Smith now appeals from the trial court's grant of summary judgment to the defendants and contends that there remained a genuine issue of material fact about whether there was probable cause to

arrest her for aggravated stalking. For the reasons presented below, we affirm the trial court's judgment.

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' OCGA § 9-11-56 (c)." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

> On appeal from the denial or grant of summary judgment, the appellate court must conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Newstrom v. Auto-Owners Ins. Co.*, 343 Ga. App. 576, 577 (1) (807 SE2d 501) (2017).

Notably, Smith's statement of the facts consists primarily of a long narrative without citations to the record supporting her factual account. Court of Appeals Rule 25 (a) (5) requires that the appellant's brief include "[a] statement of the case that sets out the material facts relevant to the appeal, describes the relevant proceedings below,

and identifies how each enumerated error was preserved for review, with appropriate citations to the record." Although Smith has sporadically included citations to some portions of the record, particularly to the trial court's order and other filings in the trial court, we advise Smith that the failure to include the appropriate citations to the record below may

> hinder[] our appellate review. By failing to provide proper record citations, [Smith] run[s] the risk that we will miss evidence relevant to their arguments. While it is possible that such evidence exists somewhere in the appellate record, we have repeatedly held that it is not the function of this court to cull the record on behalf of a party.

(Citation and punctuation omitted.) *Mommies Properties v. Semanson*, 366 Ga. App. 153, 154 (1) (880 SE2d 376) (2022). See *Luong v. Tran*, 280 Ga. App. 15, 18 (2) n. 17 (633 SE2d 797) (2006) (noting that citations to the trial court's order and to counsel's argument on summary judgment are not citations to evidence contained in the record); *Sulejman v. Marinello*, 217 Ga. App. 319, 320 (1) (457 SE2d 251) (1995) ("Appellate judges should not be expected to take pilgrimages into records in search of error without the compass of citation and argument."). Nevertheless, the defendants have provided sufficient citations to the record in their brief, but "if we

miss something in the record or misconstrue an argument due to the nonconforming brief, the responsibility rests with [Smith]." *Stewart v. Johnson*, 358 Ga. App. 813, 814 (856 SE2d 401) (2021).

Viewed most favorably to Smith as the nonmoving party, the records reveals that after a March 2020 altercation with her husband, Smith was charged with aggravated assault, family violence. Smith pled nolo contendere to a reduced charge of disorderly conduct and was sentenced on May 13, 2022 as a first offender to 12 months probation and a $1,000 fine, and was prohibited from contact with her husband during the probation period. Specifically, Smith could "have no contact of any kind, in person, or by telephone, mail or otherwise" with her husband. The sentence was subsequently discharged by the court's order filed on June 2, 2022, and the order also directed that the Georgia Crime Information Center ("GCIC") be notified of the discharge.

On July 12, 2022, Smith was involved in a physical altercation with her, by that time, ex-husband.[1] The altercation occurred at Smith's home, and afterward her ex-

---

[1] Smith had divorced her husband by publication in May of 2022, and according to Smith, he did not find out about the divorce until the night of the arrest at issue in this appeal.

husband left the home. Believing that he had taken her gun and cellular phone, Smith confronted him at a local Wal-Mart where the ex-husband's truck was parked. The couple continued to argue, and Smith drove to a different Wal-Mart where she called police and alleged that her ex-husband had stolen her property.

Rogers responded to the call and during her conversation with Smith, Smith described that she and her husband had a physical altercation while she was trying to get her possessions back. Rogers was informed by dispatch that Smith was subject to a protective order in the GCIC database and that her ex-husband was the protected party. Rogers averred that she confirmed the information more than once. Rogers contacted another officer who was at the Wal-Mart with the ex-husband and was informed that the ex-husband reported that Smith hit him in the face, and the other officer confirmed that he had a visible injury to his face. Rogers arrested Smith for family violence battery and aggravated stalking. Rogers averred that she was told by a supervisor that based on the GCIC information, Smith could be arrested for aggravated stalking.

The next day, July 13, Rogers obtained an arrest warrant against Smith for family violence battery and aggravated stalking. Smith appeared before a magistrate

judge on July 14,[2] and the next day, the district attorney's office informed Rogers that the protective order was no longer in effect, despite it being on the GCIC database. Rogers withdrew the original arrest warrant and obtained a new arrest warrant for misdemeanor family violence battery. Smith appeared before the court again on July 19, at which time she was granted bond on the battery charge and released.

Alleging claims of false imprisonment, false arrest, and malicious prosecution, Smith filed the subject complaint in Cherokee County Superior Court, and the defendants removed the case and transferred it to federal district court. In response, Smith filed a motion to remand the case back to state court, which was granted. Upon the defendants' motions for summary judgment and following a hearing on the motions, the trial court granted the motions finding that, as to Smith's claims against the defendants in their official capacities, the claims were barred by sovereign immunity.

In regard to the claims against the defendants in their individual capacities, the trial court found that "the actions at issue, management of a city or department and

---

[2] Smith recalled that the clerk advised the trial court at the hearing that the GCIC report showing a valid protective order was incorrect, but the trial court advised Smith to request that her attorney contact the court with the information.

the decision to arrest, were discretionary in nature,[and thus] the Defendants can only be held liable under Georgia law if [Smith] can show that they acted with actual malice." The trial court concluded that Mayor Grant and Chief Merrifield were entitled to official immunity given their remoteness to Smith's arrest and her failure to demonstrate actual malice on their behalf. The trial court also found that Rogers had probable cause to arrest Smith for battery and aggravated stalking based on the information he had at the time from the GCIC database, and that the fact that the GCIC information was incorrect did not demonstrate actual malice. The trial court further found that the finding of probable cause for the battery arrest is a binding determination of probable cause for the aggravated stalking because it was a related charge that arose from the same transaction or occurrence.[3] See *Remeneski v. Klinakis*, 222 Ga.App. 12, 15 (1) (473 SE2d 223) (1996) (holding that "a finding of probable cause as to one related offense arising from the same transaction is a binding determination that there was probable cause for all related charges arising from the same transaction or occurrence").

---

[3] The order mistakenly referred to the stalking charge as "assault," but it was apparent that it was a scrivener's error and Smith does not claim that she was in any way harmed by the error given that the aggravated stalking charge was dismissed.

On appeal, Smith does not challenge the trial court's grant of summary judgment to the defendants in their official capacities based on sovereign immunity, or the grant of summary judgment to Grant and Merrifield in their individual capacities. Smith further concedes that her arrest for battery was warranted given the visible injuries to her ex-husband. Smith's primary challenge on appeal is to the trial court's conclusion that Rogers had probable cause to arrest her for aggravated stalking based on the "binding determination rule." According to Smith, the battery and the aggravated stalking were too remote to have resulted from the same conduct such that the finding of probable cause for battery would also establish probable cause for aggravated stalking.

> Georgia recognizes
>
> three different related torts in this area, although the distinctions among the three are not always clear in our case law: (1) false imprisonment, which is unlawful detention without judicial process, or without the involvement of a judge at any point; (2) false or malicious arrest, which is detention under process of law; and (3) malicious prosecution, which is detention with judicial process followed by prosecution.

(Citations and punctuation omitted.) *McClendon v. Harper*, 349 Ga. App. 581, 585 (1) (826 SE2d 412) (2019). Thus, "[t]he key distinction between false arrest and false

imprisonment is whether the person was detained using a warrant or not." (Citation and punctuation omitted.) *Smith v. Wal-Mart Stores East*, 330 Ga. App. 340, 343 (1) (765 SE2d 518) (2014). Where, as here, there has been an arrest pursuant to a warrant, the remedy depends on whether the accused was prosecuted. "If after the arrest[,] the warrant is dismissed or not followed up, the remedy is for malicious arrest. But if the action is carried on to a prosecution, an action for malicious prosecution is the exclusive remedy, and an action for malicious arrest will not lie." (Citation and punctuation omitted.) *Garner v. Heilig–Meyers Furniture Co.*, 240 Ga. App. 780, 781–782 (1) (525 SE2d 145) (1999). For purposes of malicious prosecution, "an inquiry before a committing court or a magistrate shall amount to a prosecution." OCGA § 51-7-42. In this case, although the aggravated stalking charge was dismissed after it was confirmed that the disorderly conduct and protective order had been discharged, Smith appeared before "a committing court" twice during her incarceration. See *Branson v. Donaldson*, 206 Ga. App. 723, 725-726 (1) (c) (426 SE2d 218) (1992) (a proceeding in which the plaintiff, after his arrest, was brought before a magistrate who set bond constitutes an inquiry before a committing court or magistrate). Thus, Smith's remedy lies in malicious prosecution.

Malicious prosecution, governed by OCGA § 51-7-40, requires that Smith "show the following: (1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage." (Punctuation and footnote omitted.) *McNeely v. Home Depot*, 275 Ga App. 480, 482 (621 SE2d 473) (2005). "The existence of probable cause is an absolute defense to a claim of malicious prosecution." *Holmes v. Achor Center*, 242 Ga. App. 887, 889 (1) (531 SE2d 773) (2000).

Probable cause is defined as "[f]acts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." (Citation and punctuation omitted.) *Hughes v. State*, 296 Ga. 744, 748 (770 SE2d 636) (2015). Generally, a jury decides whether probable cause exists, and the trial court determines the issue only when the material facts are undisputed. See *Ye v. Kroger Co.*, 252 Ga. App. 712, 713 (1) (556 SE2d 879) (2001).

In this case, at the time of the arrest, the GCIC database reflected that Smith was subject to a protective order restricting contact with her ex-husband. Thus, when dispatch checked the GCIC, it notified Rogers about the protective order. Rogers also independently checked the GCIC to confirm that there was a protective order in place, learned from Smith that the couple had gotten into an altercation earlier that night, and found out that the ex-husband had visible injuries to his face. These circumstances in totality would have led any prudent person to believe that Smith had committed the offense listed on the warrant; consequently, Rogers had probable cause to arrest Smith. See *Paxton v. State*, 160 Ga. App. 19, 19 (1) (285 SE2d 741) (1981) ("While [GCIC] printouts are not alone sufficient evidence to permit conviction, the cases uniformly recognize that [the] printouts are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest.") (citation, punctuation, and emphasis omitted).

In light of our conclusion above, we need not consider Smith's challenge to the trial court's alternative conclusion regarding the applicability of the so-called "binding determination rule" to the finding of probable cause.

*Judgment affirmed. Brown, C. J., and Watkins, J., concur.*